UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM J. MURRAY,

                                              Plaintiff,

                                                                                       <u>DECISION AND ORDER</u>

                                                                                         08-CV-6383L

                                              v.

GARY COLEMAN, et al.,

                                              Defendants.
_____

       This is a *pro se* civil rights action under 42 U.S.C. § 1983 brought by William A. Murray. Murray asserts two claims against twenty-one individual defendants, twenty of whom are employees of the New York State Department of Correctional Services ("DOCS"), and one of whom is an employee of the Department of Civil Service.

       Plaintiff alleges that he has been a DOCS employee since 1997 and that he is currently employed at Five Points Correctional Facility.[1] He alleges that since he began working at Five Points, he has identified and reported on various instances of fraud within DOCS, and that he has been retaliated against as a result of his activities in this regard, in violation of his free-speech and due process rights.

---

[1] In 2009, this Court issued a Decision and Order finding that plaintiff was an employee of DOCS, rather than an independent contractor. 604 F.Supp.2d 581, 587.

Currently pending before the Court are defendants' motion for summary judgment (Dkt. #172) and plaintiff's motion for summary judgment (Dkt. #174).  For the following reasons, both motions must be denied.

## DISCUSSION

### I. First Amendment Retaliation:  General Principles

The background of this case has been set forth in prior decisions of this Court, *see* 2013 WL 5490083 (W.D.N.Y. Sept. 30, 2013); 604 F.Supp.2d 581 (W.D.N.Y. 2009), and need not be repeated at length here.  The gist of defendants' argument on the present motion is that plaintiff's speech at issue is not constitutionally protected because he spoke in his capacity as a public employee, not as a private citizen.  Defendants also contend that plaintiff received all the process to which he is due.

A public-employee plaintiff pursuing a claim for First Amendment retaliation must demonstrate that:  (1) his speech addressed  a matter of public concern; (2) he suffered an adverse employment action; and (3) there is a causal connection between his speech and the adverse action, so that it can be said that his protected speech was a motivating factor in the adverse action.  *See Campanella v. County of Monroe*, 853 F.Supp.2d 364, 373 (W.D.N.Y. 2012) (citing *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004).

Once a plaintiff establishes these elements, the governmental entity may avoid liability by showing either (1) that it would have taken the same adverse action regardless of the protected speech, or (2) that the plaintiff's expression was likely to disrupt the employer's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression.  *Cobb*, 363 F.3d at 102 (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the United States Supreme Court reaffirmed the principle that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* at 417. In so holding, the Court stated that its prior decisions in *Pickering* and *Pickering*'s progeny "identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech":

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti*, 547 at 417 (internal citations omitted).

The first of these inquiries can be further broken down into two separate elements. The first involves whether the subject of the employee's speech was a matter of public concern. The second involves whether the employee spoke "as a citizen" rather than solely as a public employee. *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir.), *cert. denied*, __ U.S. __, 132 S.Ct. 1634 (2011).

Whether speech is on a matter of public concern is a question of law. *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). That question "is to be answered by the court after examining the "content, form, and context of a given statement, as revealed by the whole record," *id.* (quoting *Connick*, 461 U.S. at 147-48). "Exposure of official misconduct ... is generally of great consequence to the public." *Id.* at 236 (quotation omitted).

As the Supreme Court has recently pointed out, "[t]here is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees," since "'[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" *Lane v. Franks*, __ U.S. __, 2014 WL 2765285, at *6 (June 19, 2014) (quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion)). "The interest at stake is as much the public's interest in receiving

3

informed opinion as it is the employee's own right to disseminate it." *Id.* (quoting *San Diego v. Roe*, 543 U.S. 77, 82 (2004) (per curiam)).

The second half of this analysis involves whether the employee spoke *as* an employee, or as a private citizen. "If the employee did not speak as a citizen, the speech is not protected by the First Amendment ... ." *Id.* at 237. "Whether the employee spoke solely as an employee and not as a citizen is also largely a question of law for the court." *Id.* "As a rule of thumb, activities required of the employee as part of his employment duties are not performed 'as a citizen' if they are not 'the kind of activity engaged in by citizens who do not work for the government.'" *Id.* (quoting *Garcetti*, 547 U.S. at 423). In general, a public employee speaks as an employee if there is "no relevant analogue to citizen speech." *Id.* at 238. "The matter of whether the government employee's duties do or do not have a civilian analogue is a question of law." *Id.*

**II. Application to this Case**

Applying these principles to the case at bar, I find that issues of fact preclude summary judgment for either party. In particular, there are issues concerning the capacity in which plaintiff spoke, and whether the alleged adverse actions were causally related to his speech.

Defendants do not appear to dispute that plaintiff's speech at issue related to matters of public concern, and I find that at least some of it did. Plaintiff has alleged, and submitted evidence, that he complained of fraud involving the misappropriation of millions of dollars in government funds, unlawful early release of inmates, and unlawful nepotism within DOCS. *See* Dkt. #120 at 3-4. There can be little doubt that these are matters of public concern. In fact, the United States Supreme Court has just reaffirmed that "misuse of state funds ... obviously involves a matter of significant public concern." *Lane v. Franks*, __ U.S. __, 2014 WL 2765285, at *9 (June 19, 2014).

*See also Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 578 (6th Cir. 1997) (matters involving the misappropriation of public monies are "near [the] zenith" of public concern); *Williams v. County of Nassau*, 684 F.Supp.2d 268, 287 (E.D.N.Y. 2010) (plaintiff's speech alleging that "County agencies and employees were engaging in improper, and potentially corrupt or fraudulent, practices" was "clearly a matter of public concern and therefore protected by the First Amendment") (citing *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 140 (2d Cir. 1999)).

The next question, then, is whether plaintiff spoke as a private citizen or pursuant to his duties as a public employee. "Public employees speak as employees–and not as citizens–when they 'make statements pursuant to their official duties.'" *Massaro v. New York City Dep't of Educ.*, 481 Fed.Appx. 653, 655 (2d Cir. 2012) (quoting *Garcetti*, 547 U.S. at 421).

As the Second Circuit has explained,

> The objective inquiry into whether a public employee spoke pursuant to his official duties is a practical one. Speech may be deemed "pursuant to" a public employee's official duties if it is part-and-parcel of his concerns about his ability to properly execute his duties. The lack of a citizen analogue to the form of the plaintiff's speech also bears on whether the public employee is speaking as a citizen.

*Id.* (internal quotes and alterations omitted).

In the case at bar, plaintiff made numerous complaints to numerous persons about what he perceived as wrongdoing within DOCS. Plaintiff has submitted hundreds of pages of exhibits (Dkt. #174) that include copies of those complaints. Clearly some, and perhaps most of plaintiff's complaints were made "up the chain of command." Such complaints are generally considered not to constitute protected speech, particularly insofar as plaintiff had a statutory duty to report to the state inspector general ("IG") "any information concerning corruption, fraud, criminal activity, conflicts of interest or abuse by another state officer or employee relating to his or her office or

employment ... ." N.Y. Exec. L. § 55(1).  *See Carter v. Incorporated Village of Ocean Beach*, 415 Fed.Appx. 290, 293 (2d Cir. 2011) (plaintiffs' reporting, up the chain of command, of what they believed to be a supervisor's misconduct was made pursuant to their official duties, and as such, plaintiffs were not engaging in constitutionally protected speech).

It is clear, however, that plaintiff's speech was not limited to "employee speech."  Again, the Supreme Court has just stated that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee–rather than citizen–speech.  The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  *Lane*, 2014 WL 2765285, at *8.

Plaintiff's speech here went well beyond speech that could be considered "ordinarily within the scope of [his] duties."  Plaintiff did not just direct his complaints to his supervisors, up the chain of command.  He also wrote to the New York State governor, and to his representatives in the state legislature and in Congress.  *See* Dkt. #174.  Though that alone is not dispositive of whether his speech was protected, it is some indication that it is entitled to First Amendment protection.  *See Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. 2006) (former prison guard's complaints to a state senator and to state inspector general about her superior's failure to respond to inmates' sexually explicit behavior towards female guards was protected speech) (cited with approval in *Weintraub v. Board of Educ. of City School Dist. of City of New York*, 593 F.3d 196, 204 (2d Cir.), *cert. denied*, __ U.S. __, 131 S.Ct. 444 (2010)).  *See also Smith v. County of Suffolk*, No. CV 10-1397, 2013 WL 752635, at *10 (E.D.N.Y. Feb. 27, 2013) ("speech that is publicly disclosed and goes outside the workplace, such as ... complaints to elective officials or independent state agencies, as compared to union grievances, may well be citizen speech") (citing *Weintraub*, 593 F.3d at 202).

In addition, while some of the things of which plaintiff complained may have come to his attention by virtue of his employment, the subject matter of his complaints was not limited to matters directly related to his job as a substance abuse counselor.  The alleged fraud, nepotism and other misconduct alleged by plaintiff did not directly concern his job duties or his ability to perform his job, and his complaints were not limited to some purely personal grievance.  *See Looney v. Black*, 702 F.3d 701, 718 (2d Cir. 2012) ("To determine whether speech was made 'pursuant to' one's official job duties, it is necessary to ascertain whether the speech at issue 'owed its existence to [the plaintiff's] job duties *and was made in furtherance of those duties*'") (quoting *Ross v. Breslin*, 693 F.3d 300, 308 (2d Cir. 2012) (alteration in original); *Jackler*, 658 F.3d at 240 (First Amendment protections applied to a police officer's refusal to change his statements about a colleague's conduct, in part because the colleague's conduct "did not implicate [the plaintiff's] ability to do his own job properly");  *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) ("The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose'") (quoting *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir.1999)).

Likewise, "the fact that a member of the general public would not have inside knowledge of alleged misconduct [i]s 'exactly the point[.]  ... '[S]uch speech must necessarily be protected by the First Amendment to protect the public's significant First Amendment interest in receiving information about the functioning of government, to which they otherwise would not be privy.'" *Smith*, 2013 WL 752635, at *12 (quoting *Griffin v. City of New York*, 880 F.Supp.2d 384, 400 (E.D.N.Y. 2012).  *See also Lane*, __ U.S. at __, 2014 WL 2765285, at *7 ("the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee–rather than citizen–speech.  The critical question under

*Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties").

### III. *Pickering* Balancing

While giving due regard for the rights of public employees to speak out on matters of public concern, the Supreme Court has also "acknowledged the government's countervailing interest in controlling the operation of its workplaces." *Lane*, 2014 WL 2765285, at *6 (quoting *Pickering v. Board of Ed. of Township High School Dist. 205*, 391 U.S. 563, 568 (1968)). Thus, "[w]hen an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences." *Garcetti*, 547 U.S. at 423. If the plaintiff spoke as a citizen on a matter of public concern, it must be determined whether the governmental employer had an adequate justification for treating the employee differently from any other member of the general public. *Id.* at 417. *See also Pickering*, 391 U.S. at 568 (scope of a public employee's First Amendment rights depends on the "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"). The weighing of the competing interests is a matter of law for the court. *Jackler*, 658 F.3d at 237.

In the case at bar, defendants do not appear to rely on the *Pickering* balancing test, or to argue that they were justified in taking actions against plaintiff on account of his speech. In any event, "if [plaintiff's] allegations of internal misconduct are indeed true, [his] statements could not have adversely affected the *proper* functioning of the department since the statements were made for the very reason that the department was not functioning properly." *Id.* (quoting *Brawner v. City*

*of Richardson*, 855 F.2d 187, 192 (5th Cir. 1988) (emphasis in original).  *See also Lane*, __ U.S. at __, 2014 WL 2765285, at *10 (stating that "the employer's side of the *Pickering* scale is entirely empty," since the governmental employer had not shown that the employee's speech was false or erroneous, or that he had unnecessarily disclosed any sensitive, confidential, or privileged information).

**IV. Adverse Action and Defendants' Personal Involvement**

As stated, to establish a First Amendment retaliation claim, plaintiff must show that he suffered some adverse employment action on account of his protected speech. *Cobb*, 363 F.3d at 102. Defendants assert, in conclusory fashion, that there is no proof of any adverse action here or of any retaliatory motive. Aside from simply making that assertion, however, defendants have not developed that line of argument, cited any case law or pointed to anything in the record supporting this assertion. *See* Def. Mem. of Law (Dkt. #172-1) at 1; Def. Response (Dkt. #177-1) at 2. In short, defendants have done nothing to assist the Court on this point.

In a related vein, defendants also contend that as to most of them, plaintiff has submitted no proof of their personal involvement in the alleged constitutional deprivation. It is well established that a defendant cannot be held liable under § 1983 absent a showing of that the defendant was personally involved in the constitutional violation. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).

In response to defendants' assertions, plaintiff has submitted a voluminous set of exhibits (Dkt. #174) purporting to show both the alleged actions that he alleges were taken against him and the defendants who were personally involved in those actions. Plaintiff also alleges that up until he

began complaining about perceived corruption, he suffered no adverse actions, and his performance evaluations were consistently excellent. *Id.*

Having reviewed plaintiff's submissions, I conclude that he has raised genuine issues of material fact as to whether adverse actions were taken against him, and whether they were motivated by retaliation for his complaints. In general, whether a job-related action was "adverse" presents a question of fact. *See Lawrence v. Mehlman*, 389 Fed.Appx. 54, 56 (2d Cir.2010) ("Reprimands or negative evaluation letters may, in some circumstances, constitute adverse employment action, ... and whether they do is typically a question of fact for the jury") (citations omitted)); *De la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (holding that whether transfer to "less prestigious unit" with no pay cut was an adverse action was a question of fact for the jury).

Plaintiff's proof of retaliation is far from overwhelming. Even crediting his allegation that adverse actions began to be taken against him after he began to engage in protected speech, "such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Plaintiff has, however, also submitted some evidence that some of the actions of which he complains, such as unfavorable evaluations, were unwarranted; in fact, plaintiff contends that some of them were overturned on administrative appeal. *See* Plaintiff's Aff. (Dkt. #174) at 20 and Ex. 5.

In addition, and perhaps more to the point, defendants have failed to carry their burden on summary judgment. "On a motion for summary judgment, of course, the moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a matter of law, and in ruling on such a motion, the district court must draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party

opposing summary judgment." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (quoting *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996)) (internal citation and quotation marks omitted). In fact, even an unopposed motion for summary judgment should be granted only when the moving party has met its burden of establishing no genuine dispute of material fact and its entitlement to judgment as a matter of law. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

As stated, defendants have utterly failed to carry that initial burden. It is not this Court's responsibility to do counsel's work for them by scouring the record to determine whether counsel's conclusory arguments hold water. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) ("merely including an issue within a list [is not] adequate briefing"); *Abbasid, Inc. v. Los Alamos Nat. Bank*, No. CV-09-00354, 2010 WL 9485873, at *1 (D.N.M. July 23, 2010) ("where counsel has failed to provide the Court with even the minimal factual and legal research necessary to the Court's analysis of the issues presented, the Court is under no obligation to, and will not, do counsel's work for them"), *aff'd*, 666 F.3d 691 (10th Cir. 2012); *see also Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994) ("District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits") (Easterbrook, J.). If the State is serious about the motion, it must make the necessary effort.[2]

Perhaps on a more thoroughly briefed and well-supported motion, summary judgment might be appropriate here. As it stands now, though, defendants' motion, insofar as it rests on the argument that plaintiff has failed to show adverse action or present proof of retaliation, must be denied.

---

[2]In similar fashion, defendants have included a line in their briefs requesting that the Court grant them summary judgment on the ground of qualified immunity. *See* Dkt. #172-1 at 7; #177-1 at 7. Again, the Court will not enter judgment based on what amounts to a "throwaway" line in a brief.

After reviewing the record, however, I do conclude that plaintiff has failed to present adequate proof of personal involvement with respect to the following defendants: John Nuttall, Tom Knight, James Kessel, Chad Powell, Mary Mayville, and George Glassanos. Accordingly, plaintiff's claims against those six defendants are dismissed.

**V. Due Process**

Plaintiff also alleges that defendants have violated his due process rights under the Fourteenth Amendment. *See* Amended Complaint (Dkt. #120) ¶ 20. Defendants contend that this claim should be dismissed on the ground that plaintiff has received all the process to which he is due.

Although plaintiff asserts that he has been denied substantive due process, *see* Plaintiff's Aff. (Dkt. #179) at 8, it is apparent from his complaint and other papers that his claim fits more comfortably within the notion of procedural due process. *See Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (explaining differences between the two). Accordingly, the Court construes it as such.

It is also apparent that this claim is based on random, unauthorized acts by state employees, rather than on established state procedures. Plaintiff does not allege that established state procedures worked a deprivation of his rights; he alleges that individual state actors did so, with no justification under state or federal law. The question, then, is whether post-deprivation procedures were available and adequate. *See DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003); *Nash v. McGinnis*, 585 F.Supp.2d 455, 461 (W.D.N.Y. 2008).

Plaintiff does not deny that post-deprivation procedures were available. By his own admission, he availed himself of them. He does contend that those procedures were inadequate, but he has failed to demonstrate how.

The gist of plaintiff's arguments seems to be that post-deprivation state procedures, such as an Article 78 proceeding, could not provide him with damages for the wrongs that he suffered. But that does not equate to a due process violation. The underlying wrongs complained of are the alleged retaliatory acts in violation of plaintiff's First Amendment rights. Plaintiff can attempt to, and does, seek to vindicate those rights in this § 1983 action. To say that he has been deprived of his due process rights because he cannot recover damages in an Article 78 proceeding would mean that virtually every civil rights plaintiff would be entitled to assert a due process claim.

Plaintiff also claims to have suffered some lasting effects (such as denials of promotions) from defendants' acts, that either cannot or have not been remedied by his administrative proceedings. Some of those allegations are purely conclusory and are not supported by the record. To the extent that they are supported by evidence in the record, it appears that plaintiff has simply alleged that defendants have continued to retaliate against him. If so, then the problem is not the inadequacy of state procedures, but the continuation of defendants' retaliatory behavior. Such claims can and should more properly be addressed within the context of plaintiff's First Amendment claim. Plaintiff's due process claim is therefore dismissed.

**VI. Plaintiff's Motion for Summary Judgment**

Plaintiff has also moved for summary judgment (Dkt. #174). As should be apparent from the preceding discussion, I find that there are genuine issues of material fact concerning his First Amendment claim, particularly concerning whether he suffered any adverse actions at the hands of

defendants, and whether those actions were the result of defendants' retaliatory motives.  Plaintiff's motion is therefore denied.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #172) is granted in part and denied in part.  Plaintiff's second cause of action, alleging a due process violation, is dismissed.  Plaintiff's claims against defendants John Nuttall, Tom Knight, James Kessel, Chad Powell, Mary Mayville, and George Glassanos are dismissed.  In all other respects, defendants' motion is denied.

Plaintiff's motion for summary judgment (Dkt. #174) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 2, 2014.