UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM J. MURRAY,

                                    Plaintiff,

                                                              DECISION AND ORDER

                                                              08-CV-6383L

                    v.

GARY COLEMAN, et al.,

                                    Defendants.

_____


## INTRODUCTION

Plaintiff William A. Murray brought this action under 42 U.S.C. § 1983 against the State of New York, the New York State Department of Correctional Services ("DOCS"), and a number of individual defendants, most of whom are or were employed by DOCS at the time of the relevant events, alleging that the defendants violated his constitutional rights to free speech and due process.[1]

For much of the time this action was pending, plaintiff represented himself.  The case was duly scheduled for a jury trial to begin on May 16, 2016.

On May 6, 2016, ten days before the trial was set to begin, attorney Terrance J. Hoffmann entered his appearance on behalf of plaintiff, pursuant to a retainer agreement entered into by plaintiff and Hoffmann on or about that same date.

_____

[1]DOCS is now known as the Department of Corrections and Community Supervision, which is often referred to by the acronym "DOCCS."  For the sake of convenience, the Court will use "DOCS" throughout this Decision and Order, since that is the acronym for the name by which the agency was known at the time of filing of this lawsuit.

The trial began as scheduled on May 16.  By that date, the Court had dismissed plaintiff's claims against the State of New York and DOCS, and his claims against several of the individual defendants.  The Court had also dismissed in its entirety plaintiff's due process claim.  (Dkt. #180.)  That left plaintiff's First Amendment free-speech claim against the remaining individual defendants.

At the close of plaintiff's proof at trial, the Court granted defendants' Rule 50 motion for judgment as a matter of law as to five of the remaining defendants.  Plaintiff's First Amendment claim for damages proceeded against the nine other individual defendants.  (Dkt. #243.)

The jury returned a verdict finding no cause of action against seven of those defendants, but also found that plaintiff had established his claims against two defendants, John Lempke and Thomas Poole.  The jury awarded $6500 in economic damages, and no punitive damages.  (Dkt. #241.)

The Court entered judgment based on the jury's verdict.  (Dkt. #242.)  Afterwards, defendants Lempke and Poole renewed their motion for judgment as a matter of law.  (Dkt. #251.)  *See* Fed.R.Civ.P. 50; *Stoma v. Miller Marine Servs.*, 271 F.Supp. 2d 429, 430 (E.D.N.Y. 2003).  That motion is now pending before the Court, as is plaintiff's motion for attorney's fees.  (Dkt. #249.)   For the reasons that follow, defendants' Rule 50 motion is denied, and plaintiff's motion for attorney's fees is granted, in part.

## DISCUSSION

### I. Defendants' Rule 50 Motion

Lempke and Poole have filed a "renewed" Rule 50 motion seeking judgment as a matter of law ("JMOL").  The standard for deciding such a motion is well established:  "Where a jury has rendered a verdict for the non-movant, a court may grant JMOL 'only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror

would have been compelled to accept the view of the moving party.'" *MacDermid Printing Solutions LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016) (quoting *Cash v. City of Erie*, 654 F.3d 324, 333 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012)).  In applying that standard, the court may not "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."  *Gatti v. Community Action Agency of Greene Cty., Inc.*, 263 F.Supp.2d 496, 503 (N.D.N.Y. 2003) (quoting *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 167-68 (2d Cir. 1980)).

Aside from one block quote from an unrelated case, defendants' motion papers comprise all of two sentences.  Given its brevity, the Court quotes defendants' motion (minus the aforementioned block quote) in its entirety:

> The plaintiff's proof failed to show that Superintendents Poole and Lempke were each aware of his allegedly protected speech at the time of his notices of discipline.  ... [T]he record failed to show that neither [sic] Superintendent Poole nor Lempke had knowledge of the plaintiff's letter to the Governor's Office and responded to by [sic] the Department's Commissioner–let alone its content.

(Dkt. #251 at 1.)

As stated, at the close of the plaintiff's proof at trial, the Court allowed the case to go forward as to nine defendants, including Lempke and Poole.  Lempke was the superintendent of Five Points Correctional Facility, where plaintiff works, and Poole had previously held that position.

In support of their motion, then, defendants contend that the evidence at trial did not show that Poole or Lempke were aware of plaintiff's protected speech at the time that they imposed or ratified any disciplinary or otherwise adverse actions against him.  In general, a plaintiff cannot make out a First Amendment retaliation claim without proof that the defendant was aware of the plaintiff's protected speech.  *See*, *e.g.*, *Allah v. Michael*, 506 Fed.Appx. 49, 52 (2d Cir. 2012) (affirming summary judgment as to First Amendment retaliation claim where defendant was not aware of prisoner plaintiff's complaint); *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) (granting summary judgment as to retaliation claim

where plaintiff did not come forward with evidence that defendant knew about her protected activity).

Having seen and heard all the evidence introduced at trial, however, I find that the evidence is sufficient to support the verdict against Poole and Lempke. The evidence at trial showed that plaintiff was not shy about voicing his complaints concerning perceived wrongdoing within DOCS, and that those complaints were well known, both generally and by Poole and Lempke. For example, in a letter dated April 12, 2007, DOCS Commissioner Brian Fischer responded to an e-mail that plaintiff had sent to then-Governor Eliot Spitzer, complaining of certain misconduct by DOCS officials, in which Fischer referenced plaintiff's "previously submitted letters," adding that plaintiff's "allegations ha[d] been investigated a number of times and ... found to to be totally without merit." Dkt. #255-2 at 2.

In a written report dated December 22, 2005, Senior Investigator Thomas Knight detailed the results of his investigation of certain complaints that plaintiff had made concerning the early release of inmates. Knight stated that in the course of his investigation, Poole was interviewed regarding plaintiff's complaints, and "denied harassing or 'blackballing' Mr. Murray in any way." (Dkt. #255-3 at 3.)

There was also evidence that plaintiff communicated directly with Lempke about perceived problems within DOCS. That evidence includes a memo dated February 23, 2009, from plaintiff to Lempke, outlining plaintiff's "concerns related to the ADT [Alternative Drug Treatment] program" and plaintiff's allegation that he had been retaliated against for "whistleblower activities." (Dkt. #255-4 at 2, 3.)

In short, based on the evidence presented at trial, the jury could reasonably have concluded that plaintiff, and his various complaints about what he considered to be wrongdoing within DOCS, were well known throughout the DOCS system. Defendants' cursory assertions to the contrary notwithstanding, the jury could also reasonably have found that such knowledge extended to defendants Poole and Lempke. The jury's verdict against Poole and Lempke thus

-4-

had "a legally sufficient evidentiary basis ... ."  *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016).  Defendants' motion for judgment as a matter of law is therefore denied.

## II. Plaintiff's Motion for Attorney's Fees

### A. General Standards

Plaintiff has moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988, which authorizes the court to award "a reasonable attorney's fee" to a "prevailing party."  "[P]laintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted).  *See also Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (a "prevailing party" is "one who has favorably effected a 'material alteration of the legal relationship of the parties' by court order") (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).  A plaintiff who is awarded damages has received actual relief on the merits of his claim, and is therefore a prevailing party.  *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (even an award of nominal damages is enough to confer prevailing-party status on a plaintiff); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, __ F.3d __, 2017 WL 343520, at *5 (11th Cir. 2017) (fee-shifting is appropriate "so long as the prevailing party obtains judgment on even a fraction of the claims advanced") (internal quote omitted); *Raishevich v. Foster*, 247 F.3d 337, 345 (2d Cir. 2001) (holding in the § 1983 context that plaintiff was a prevailing party "despite the fact that he received a lesser [damages] amount than he sought, because a 'judgment for damages in any amount ... modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay'") (quoting *Farrar*, 506 U.S. at 113).

Once it is determined that a party is entitled to fees, "[i]t remains for the district court to determine what fee is 'reasonable.'"  *Hensley*, 461 U.S. at 433.  In calculating a "presumptively

reasonable fee"–often referred to as the "lodestar figure"–the district court must "determine what a reasonable paying client would be willing to pay for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." *Spalluto v. Trump Int'l Hotel & Tower*, No. 04-CV-7497, 2008 WL 4525372, at *5 (S.D.N.Y. Oct. 2, 2008) (internal quotation marks and citations omitted).  *See*, *e.g.*, *Frommert v. Conkright*, __ F.Supp.3d __, 2016 WL 7186489, at *4-*5 (W.D.N.Y. 2016).

The applicable hourly rate should be "based on market rates in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  It is well-established that the prevailing community a district court should consider ... is normally the district in which the court sits." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citation omitted), *cert. denied*, 549 U.S. 1211 (2007).

The court must also determine whether the hours claimed were reasonably expended. The court may, in its discretion, cut the number of hours included in the fee calculation if the claimed time is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *M. Lady, LLC v. AJI, Inc.*, No. 06-CV-194, 2009 WL 1150279, at *8 (S.D.N.Y. Apr. 29, 2009) (internal quotation marks and citation omitted).

Another factor of some relevance to this case is the fee applicant's degree of success. While there is no precise formula, it is entirely appropriate for a court to reduce a fee award where the plaintiff has "achieved only partial or limited success." *Hensley*, 461 U.S. at 436. Indeed, the Court in *Hensley* described the plaintiff's degree of success as "the most critical factor" in deciding on a fee award. *Id.  See also Kassim v. City of Schenectady*, 415 F.3d 246,

256 (2d Cir. 2005) (discussing district court's authority to reduce fee awarded to a prevailing plaintiff by reason of plaintiff's "partial or limited success").

## B. Application to this Case

Plaintiff seeks an award of attorney's fees in the amount of $41,900.  That amount represents 60 hours of in-court time at $300 per hour ($18,000), 55 hours of out-of-court time at $275 per hour ($25,300), and $3600 for travel time, less $5000 in "consultation fees" that have already been awarded to plaintiff in the Bill of Costs issued by the Clerk of the Court.[2]

Defendants do not deny that plaintiff is entitled to some award of attorney's fees, but they contend that the award should be significantly reduced.  First, while defendants do not take issue with the hours claimed, they argue that plaintiff's attorney's hourly rate should be reduced to $250, which would yield a lodestar of $28,750.

Beyond that, defendants state that plaintiff's award should be reduced to account for plaintiff's "limited success."  Defendants note that in the amended complaint (Dkt. #120), plaintiff requested $1.6 million in damages, and that he was awarded $6500 by the jury.[3] Defendants suggest a 60% reduction of the lodestar, which would result in an award of $11,500.

With respect to the hourly rate, I find that the rates sought are reasonable.  The Court is aware of rates in this district, and of counsel's experience in litigation and civil rights.  I do not believe that the requested rates are out of line for a case of this nature and for an attorney of comparable skill.  I therefore make no reduction in the hourly rate.  *See Curtis v. City of*

---

[2]Plaintiff's Notice of Motion (Dkt. #249) states that the total amount sought is $46,900, but that includes $5000 in "consultation fees" paid to Hoffmann by plaintiff prior to plaintiff's retention of Hoffmann.  That sum was awarded to plaintiff by the Clerk of the Court, in an order taxing costs in the amount of $17,084.83.  (Dkt. #260.)  Plaintiff states that he is not "seeking a double recovery for these fees," Dkt. #249-1 at 5, nor is he entitled to such.  The Court therefore construes his motion as seeking fees in the amount of $41,900.

[3]In the amended complaint, plaintiff asked for $800,000 as to the first and second causes of action.  It is not obvious from the face of the complaint whether plaintiff sought $800,000 in total, or $1,600,000.  Either way, he was obviously awarded far less than he originally sought.

*Kingston*, 2016 WL 1223471, at *5-*6 (N.D.N.Y. Mar. 28, 2016) (approving hourly rate of $300 for a "recognized and experienced civil rights litigator"); *see also Anello v. Anderson*, __ F.Supp.3d __, 2016 WL 3221863, at *12 (W.D.N.Y. 2016) (approving rate of $250 an hour for trial counsel, but noting that the reasonableness of that rate was not disputed).

I do find, however, that some reduction is warranted to reflect the plaintiff's limited success on the merits.  The Second Circuit has stated that "in awarding attorneys' fees, 'the most critical factor is the degree of success obtained.'"  *Patterson v. Balsamico*, 440 F.3d 104, 123 (2d Cir. 2006) (quoting *Hensley*, 461 U.S. at 436) (other citation omitted).  "If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Hensley*, 461 U.S. at 436.  "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in [his] complaint, are key factors in determining the degree of success achieved."  *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008).

As noted above, in reducing the amount of an attorney's fee award on this ground, "[t]here is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Id.* at 436-37.  In deciding whether to reduce a fee award based on limited success, the court should consider whether the plaintiff obtained relief on claims that were legally and factually discrete from those on which he failed to obtain relief.  *K.L. v. Warwick Valley Central Sch. Dist.*, 584 Fed.Appx. 17, 19 (2d Cir. 2014).

In the case at bar, plaintiff asserted two claims, based on one set of facts.  Plaintiff asked for $800,000 in damages on each claim.  One of those claims was dismissed by the Court, as were many of the individual defendants.  The other was submitted to the jury, which awarded plaintiff awarded $6500 against two defendants, and found no liability on the part of seven other defendants.

-8-

The Court recognizes that in determining whether to reduce a fee award based on limited success, the court should not place great weight on the *ad damnum* clause of the complaint.  *See Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 338 & n. 4 (1st Cir. 1997) (noting that "[t]he use of the ad damnum for [the purpose of determining the degree of a plaintiff's success] is suspect because the ad damnum is an inherently artificial construct" and that even "a chasmal gulf between the damages requested ... and the damages awarded" should be but one factor in the calculus).  At the same time, in assessing the plaintiff's degree of success, the Court can hardly ignore the fact that the damages awarded by the jury amounted to less than one percent of what the plaintiff originally sought.  That is "one factor in the calculus." *Id.*

Plaintiff also acknowledges that at one point, defendants made a settlement offer of $175,000, which plaintiff rejected.  *See* Hoffmann Aff. (Dkt. #258) ¶ 3.  Plaintiff correctly points out that the offer was contingent upon his agreeing to resign or retire immediately, which could have had negative consequences with respect to his pension benefits.

But by any measure, the outcome of the trial can hardly be described as a resounding success for plaintiff, especially in light of the relief sought at the outset.  Plaintiff sought millions of dollars in compensatory and punitive damages, against an array of governmental and individual defendants.  He walked away with $6500, against two individual defendants.  The stark contrast between what plaintiff sought and what he obtained brings to mind the ancient phrase, "*Parturiunt montes, nacetur ridiculus mus*."[4]

The fact remains, however, that plaintiff did obtain *some* concrete relief, and more than merely nominal damages.  As defendants themselves concede, he is entitled to some award of attorney's fees.

---

[4]"The mountains are in labor, and only bring forth a mouse."  In its Latin form, the phrase is most often attributed to Horace, although it appears that he may have taken it from an earlier source, possibly Aesop.  *See* "The Romans said it better," *The Telegraph*, Nov. 25, 2009 (describing the phrase as "a neat expression to describe huge efforts that amount to very little").

I find, however, that defendants' suggested 60% reduction of the lodestar (which they based on their already-reduced lodestar) is excessive.  The Court finds instead that an across-the-board 50% reduction is reasonable.  The Court therefore awards fees in the amount of $20,950.[5]

## CONCLUSION

Defendants' motion for judgment as a matter of law (Dkt. #251) is denied.

Plaintiff's motion for attorney's fees (Dkt. #249) is granted in part.  Plaintiff is hereby awarded attorney's fees in the amount of $20,950.  Defendants are hereby directed to pay that amount to plaintiff within thirty (30) days after the date of entry of this Decision and Order.[6]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 8, 2017.

---

[5]In making this determination, the Court does not place great weight on the dismissal of plaintiff's due process claim.  Plaintiff's two causes of action were both brought under 42 U.S.C. § 1983, upon essentially the same factual predicate.  The only distinction between them is that the first cause of action asserted a violation of plaintiff's rights under the First Amendment to the United States Constitution, and the second cause of action was brought under the Due Process Clause of the Fourteenth Amendment.  While the two claims were predicated on different legal theories, then, they were factually quite similar, and the dismissal of the due process claim likely had little if any impact on the damages awarded by the jury.

[6]*See Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) (in "allow[ing] the prevailing party ... a reasonable attorney's fee as part of the costs," § 1988 makes clear that "the party, rather than the lawyer," is eligible for fee awards"); *Gilbrook v. City of Westminster*, 177 F.3d 839, 875 (9th Cir. 1999) ("[Section] 1988 requires that attorney fee awards be made directly to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client"); *Collins v. Romer*, 962 F.2d 1508, 1516 (10th Cir. 1992) (holding that a fee award under § 1988 must go "to a party rather than to that party's attorney, even though in many instances the party will be merely a conduit for the benefit of his attorney").